AO 106 (Rev. 06/09) : Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Missouri

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A **WHITE ALFA ROMEO WITH MISSOURI LICENSE PLATE RN9-F0X** | )     **FILED UNDER SEAL** <br><br> )     4:25 MJ 1354 JMB <br><br> ) <br><br> )     SIGNED AND SUBMITTED TO THE COURT <br>       FOR FILING BY RELIABLE ELECTRONIC <br>       MEANS |

## APPLICATION FOR A SEARCH WARRANT

I, ___James Wilcox___, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

### SEE ATTACHMENT A

located in the ___Eastern___ District of ___Missouri___, there is now concealed

### SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

     XX      evidence of a crime;
     XX      contraband, fruits of crime, or other items illegally possessed;
     XX      property designed for use, intended for use, or used in committing a crime;
            a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

Title 21, United States Code, Section 841(a) and 846

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

     ✓      Continued on the attached sheet.
     ❑      Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the following is true and correct

*s/James Wilcox*
*Applicant's signature*

James Wilcox, TFO, HSI
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date ___October 3, 2025___

*Judge's signature*

City and State: ___St. Louis, Missouri___

Honorable John M. Bodenhausen, U.S. Magistrate Judge
*Printed name and title*

AUSA: JENNIFER SZCZUCINSKI

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

IN THE MATTER OF THE SEARCH OF )
**WHITE ALFA ROMEO WITH** )      No. 4:25 MJ 1354 JMB
**MISSOURI LICENSE PLATE RN9-F0X** )
 )      **FILED UNDER SEAL**

SIGNED AND SUBMITTED TO THE COURT
FOR FILING BY RELIABLE ELECTRONIC MEANS

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, James Wilcox, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a vehicle identified as a white Alfa Romeo, currently bearing Missouri license plate RN9-F0X (hereinafter the "Vehicle") further described in Attachment A, for the things described in Attachment B.

2.      I am a Task Force Officer with the Department of Homeland Security Investigations (HSI) and have been since October 2023. I have been employed by the St. Louis Metropolitan Police Department (SLMPD) since October 2008. While a P.O.S.T. certified police officer with the SLMPD I have served as a detective of the narcotics unit, a Task Force Officer (TFO) for FBI Safe Streets, and a TFO on the Fugitive Apprehension Team. I am currently assigned to HSI's St. Louis Group in the Kansas City Field Division, and I am responsible for investigating federal firearms, controlled substance, and customs violations. I have conducted numerous investigations involving both illegal narcotics and the criminal possession and use of firearms.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a) and 846 have been committed by **CASSIDY STOKES** and other persons unknown.  There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## LOCATION TO BE SEARCHED

5.     The location to be searched is: a vehicle described as a white Alfa Romeo, currently bearing Missouri license plate RN9-F0X

 

2



RN9F0X, MO, 9/17/2025 3:24:18 PM

## PROBABLE CAUSE

6.      In June of 2025, I received information from a confidential informant (CI)[1], that "Trey" is distributing fentanyl throughout the Eastern District of Missouri. The CI provided phone number (314) 780-8497 for "Trey."

7.      Based on the CI's information, I identified "Trey" as possibly being **CASSIDY STOKES**. I presented a photograph of STOKES to the CI and the CI positively identified the subject in the photograph as "Trey."

8.      The CI conducted three successful controlled purchases of fentanyl from **STOKES** in June 2025 and July 2025. During the controlled purchase law enforcement observed **STOKES** utilizing 5524 Cates Avenue, St. Louis Missouri 63112 (Premises #2), as one of **STOKES's** distribution locations. **STOKES** was also observed operating a white Alfa Romeo, bearing

---

[1] The CI is cooperating in exchange for financial compensation. The CI has a criminal history which includes arrests for possession of a controlled substance and stealing. The CI's information relative to the current investigation has been corroborated via audio/video recording, physical surveillance, and other investigative methods. To date, the CI's information in connection with this investigation has not been found to be false or misleading, and investigators find CI to be a credible, reliable source of information.

3

Missouri temporary plate 07A-B9F (the **Vehicle**)[2], which **STOKES** would sell his narcotics from while armed with a handgun after leaving Premises #2.

9. A computer inquiry of **STOKES** utilizing the REJIS system revealed Premises #2, is the primary address **STOKES** utilizes through the Missouri Department of Revenue (DOR). Further computer inquiry reflects **STOKES** has also used 870 North McKnight Road, St. Louis, Missouri 63132 (Premises #1) as an address.

10. A computer inquiry of **STOKES** revealed a prior criminal history of Tampering 2nd Degree and Resisting Arrest. It also revealed **STOKES** is a documented gang member of the "SouthSide Money" gang. The gang is known to possess weapons, sell drugs, and conduct violent offenses against the citizens of the Eastern District of Missouri.

11. On July 2, 2025, the Hon. Rodney Holmes granted a federal search warrant for precision location information for (314) 780-8497.

<u>August 13, 2025 Controlled Purchase</u>

12. On August 13, 2025, investigators from HSI-St. Louis conducted a controlled purchase of fentanyl from **STOKES** in the 5500 block of Clemens Avenue, St. Louis, MO. The controlled purchase involved utilizing an undercover agent (UCA).

---

[2] Surveillance reflects the Vehicle is currently bearing a different license plate, as explained further in subsequent paragraphs.

13.     Avenue, St. Louis, MO. The controlled purchase involved utilizing an undercover agent (UCA).

14.     The UCA contacted (314) 780-8497 and placed an order for fentanyl. The UCA positively identified **STOKES** as the person who answered the phone. The UCA was directed to 5579 Clemens by and was advised to notify **STOKES** when he/she arrived in the area.

15.     Location information during the time of this call indicated the phone was in the area of Premises #1. HSI Task Force Officers responded to Premises #1 and observed the **Vehicle**, bearing Missouri temporary plate 07A-B9F, which **STOKES** used in previous deals parked in the rear of the apartment complex. During surveillance of Premises #1, officers observed **STOKES** exit the from the 1st Floor West apartment. Shortly thereafter, the **Vehicle** left the parking lot of the apartment complex and traveled toward the 5500 block of Clemens. Location information reflected the phone appeared to travel with the **Vehicle**.

16.     When the UCA arrived in the area, the UCA notified **STOKES** via phone that he/she was present. The UCA was directed to the area of 5579 Clemens Avenue. After a period of time, the **Vehicle** pulled onto the street. The UCA observed **STOKES** conduct what appeared to be a hand-to-hand transaction with a red Ford Fiesta, which was parked near the UCA. The **Vehicle** then drove up to the UCA's vehicle. **STOKES** advised the UCA that he had to run around the corner and would be right back. The **Vehicle** was observed driving to Premises #2.

17.     The surveillance team then observed the **Vehicle** leave Premises #2 and return to the UCA's location at Clemens and Clara. The UCA walked up to the **Vehicle** and **STOKES** sold the UCA suspected fentanyl.

18.     The suspected fentanyl field-tested positive for fentanyl utilizing a Rapid Response testing kit. The fentanyl and packaging were sent to the Department of Homeland Security

Investigations Laboratory for further analysis. The analysis later revealed the illegal narcotics seized tested positive for fentanyl and cocaine.

September 4, 2025 Controlled Purchase

19.     On September 4, 2025, investigators from HSI-St. Louis conducted a controlled purchase of fentanyl from **STOKES** in the 5500 block of Clemens Avenue. The controlled purchase involved utilizing a UCA.

20.     The UCA contacted (314) 780-8497 and placed an order for fentanyl. The UCA positively identified **STOKES** as the person who answered the phone. The UCA was directed to 5579 Clemens by and was advised to notify **STOKES** when he/she arrived in the area.

21.     HSI Task Force Officers responded Premises #1 and observed the **Vehicle**, still bearing Missouri temporary license plate 07A-B9F, parked in the rear. HSI TFOs established surveillance at Premises #1. A pole camera and aerial surveillance was also utilized to assist with surveillance.

22.     Once the phone call was placed and after a period time, **STOKES** was observed exiting Premises #1. While law enforcement was conducting surveillance, a series of hand-to-hand transactions were observed being conducted on the rear parking lot of the apartment building by **STOKES**. A red Ford Fiesta[3] bearing Illinois license plate EU-43774 arrived at the rear parking lot of Premises #1. The surveillance team observed **STOKES** conduct an apparent hand-to-hand

---

[3] The red Ford Fiesta was the same vehicle observed in the area of 5579 Clemens Ave. on August 13, 2025, engaging in an apparent hand-to-hand transaction with **STOKES**. The occupants of the Fiesta were eventually identified with the assistance of law enforcement from Illinois. A computer inquiry of the occupants revealed a prior criminal history of possession of a controlled substance and a search of the Fiesta revealed numerous empty Narcan packages, which are often possessed by people with fentanyl addictions.

transaction with the occupant(s) of the Ford Fiesta. The Ford Fiesta then pulled away and out of the area. **STOKES** was observed re-entering the apartment.

23. A few moments later a dark colored Ford Ranger bearing Missouri license plate 5WG-U44, arrived on the rear parking lot of Premises #1. A short time later, surveillance observed **STOKES** exited Premises #1. **STOKES** then approached the driver's side window of the Ford Ranger and conducted what appeared to be a hand-to-hand transaction.

24. The Ford Ranger then pulled away and out of the area. **STOKES** was observed re-entering Premises #1. The occupant of the Ranger was eventually identified with the assistance of law enforcement personnel from St Ann Police Department. A computer inquiry of that subject revealed a prior criminal history for numerous arrests of possession of a controlled substance.

25. After a period of time, **STOKES** was observed in the **Vehicle** leaving Premises #1 and driving toward Premises #2.

26. The surveillance team observed the **Vehicle** park in the rear of Premises #2 and enter into the rear of Premises #2. A few moments later, **STOKES** was observed exiting the rear of Premises #2 and covering his head with balaclava, which he retrieved from the **Vehicle**. The surveillance team then observed **STOKES**, walking down the alley towards 5579 Clemens where **STOKES** sold the UCA suspected fentanyl.

27. The suspected fentanyl field-tested positive for fentanyl utilizing a Rapid Response testing kit. The fentanyl and packaging were sent to the SLMPD Laboratory for further analysis. The analysis later revealed the illegal narcotics seized tested positive for fentanyl and cocaine.

7

<u>September 18, 2025 Controlled Purchase</u>

28.    On September 18, 2025, investigators from HSI-St. Louis conducted a controlled purchase of fentanyl from **STOKES** in the 5500 block of Clemens Avenue. The controlled purchase involved utilizing a UCA.

29.    The UCA contacted the (314) 780-8497 and placed an order for fentanyl. The UCA positively identified **STOKES** as the person who answered the phone. The UCA was directed to 5579 Clemens and advised to notify **STOKES** when he/she arrived in the area.

30.    The location information for the phone at the time of the UCA call showed the phone was in the area of Premises #1. HSI Task Force Officers responded to the location, but were unable to locate the **Vehicle**. Phone location information showed the phone had moved prior to law enforcement arrival at Premises #1 and was in the City of St. Louis.

31.    The surveillance team set up on Premises #2 and observed **STOKES** arrive in the rear of the residence. **STOKES** was observed exiting the **Vehicle** and entering the rear of Premises #2 carrying (2) two large back packs.

32.    Prior to the UCA controlled purchase, the surveillance team observed a white Dodge Ram bearing Missouri license 8AF-T80 back into the driveway at the rear of Premises #2.  The truck was occupied by a black male and white female. **STOKES** was observed conducting what appeared to be a hand-to-hand narcotic transaction through the passenger side of the white Dodge Ram truck window.  After the transaction was complete the white Dodge Ram truck departed the area.

33.    When the UCA arrived in the area, the UCA notified **STOKES** via phone that he/she was present. The UCA was directed to 5579 Clemens Avenue. After a period of time, **STOKES** was observed exiting Premises #2 and walking in the rear alley toward 5579 Clemens.

8

Prior to walking down the alley, surveillance team observed **STOKES** wearing a black ski-mask, as if trying to hide his identity. **STOKES** provided a clear plastic baggie of suspected fentanyl to the UCA.

34.     The suspected fentanyl was sent to the SLMPD Laboratory for further analysis. The analysis later revealed the illegal narcotics seized tested positive for fentanyl.

35.     On September 23, 2025, I reviewed the pole camera surveillance from Premises #1 and observed the **Vehicle**, but now bearing Missouri license plate RN9-F0X. The license plate belongs on a red Mercedes operated by a black female. The black female was captured at Premises #1 on September 11, 2025 with **STOKES**. Through a computer inquiry utilizing License Plate Recognition systems, the Missouri plate RN9-F0X was captured on the **Vehicle** going back to September 17, 2025. As of October 1, 2025, the Missouri plate RN9-F0X is still on the **Vehicle**, as it was captured on surveillance at Premises #1.

36.     Moreover, as of October 1, 2025, location information for (314) 780-8497 places the phone in the area of Premises #1 most nights. The phone is also frequently in the area of Premises #2.

37.     It is my belief after conducting controlled purchases and surveillance, as well as reviewing location information for (314) 780-8497 that **STOKES** is utilizing the **Vehicle**, Premises #1 and Premises #2 to conduct his narcotic trafficking enterprise. It is my belief that he stores and sells narcotics from both residences.

38.     It is also my belief that the **Vehicle** is being utilized by **STOKES**. The **Vehicle** is not registered with the Missouri Department of Revenue. From my training experience narcotic

9

traffickers are known to utilize vehicles that are not registered to them to elude law enforcement.

39.     As part of my experience and training and that of other law enforcement officers participating in the investigation, we have accumulated information and training in the areas of narcotics based economic crime. I have had extensive experience, as have other members of the investigating team, in interviewing defendants, witnesses, informants and others who have experience in the gathering, spending, converting, transporting, distributing and concealing of proceeds of narcotics trafficking.  Based upon my and the investigating team's experience and our participation in other pending and completed controlled substances and/or financial investigations involving distribution conspiracies involving controlled substances and money, I am informed of the following:

a.     It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in their vehicles, residence or other buildings under their control.

b.     Drug traffickers frequently keep near at hand, in their vehicles, residence or other buildings under their control, paraphernalia for packaging, cutting, weighing and distributing of controlled substances.  These paraphernalia include, but are not limited to scales, plastic bags, and cutting agents.

c.     Drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, computer hard drives and disk records, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances.  Drug traffickers commonly "front" (provide drugs on consignment) controlled substances to their clients.  The aforementioned books, records, receipts, notes, ledgers, etc. are maintained where the drug traffickers have ready access to them, specifically in their vehicles, residence or in other buildings under their control.

d.      Drug traffickers commonly maintain telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service; cellular and/or landline telephones; digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association in fact with  persons known to traffic in controlled substances or to facilitate such trafficking.  These records are maintained where drug traffickers have ready access to them, specifically, in their vehicles, residence or in other buildings under their control.

e.      Drug traffickers take or cause to be taken photographs of them, their associates, their property, cash and currency, firearms, and controlled substances.  These traffickers frequently maintain these photographs on cellular phones in their vehicles, residence or other buildings under their control.

f.      Persons involved in drug trafficking conceal in their vehicles, residence or other buildings under their control large amounts of currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances.

g.      When drug traffickers amass large proceeds from the sale of controlled substances they attempt to legitimize these profits.  I know that to accomplish these goals, drug traffickers utilize financial institutions, including but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses,

11

real estate, shell corporations and business fronts.  They maintain record of these transactions in their vehicles, residence or other buildings under their control.

h.      It is common for drug traffickers to travel to major distribution centers, such as Texas, California and/or Mexico to purchase controlled substances and/or to arrange for its distribution elsewhere in the United States.  After purchasing controlled substances, these drug traffickers will transport or cause to be transported, controlled substances to the areas in which they will distribute the controlled substances.  The methods of transportation include, but are not limited to, commercial airlines, private airlines, rental automobiles, private automobiles, and government and contract mail carriers.  Records of travel are frequently kept in their residence or other buildings under their control.

i.      Drug traffickers frequently possess firearms and/or other weapons in their vehicles, residence or other buildings under their control to protect their controlled substances and/or United States currency.

## **CONCLUSION**

40.     Based on the foregoing I submit that this affidavit supports probable cause for a warrant to search the **Vehicle** described in Attachment A and seize the items described in Attachment B.

41.     I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution,

destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise

seriously jeopardize the investigation.

I state under the penalty of perjury that the foregoing is true and correct.


  10-3-2025             *s/James Wilcox*
DATE                    JAMES WILCOX
                        TFO, HSI


Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal
Rules of Criminal Procedure 4.1 and 41, this __3d__ day of October, 2025.



_____
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE


13

## ATTACHMENT A

## 4:25 MJ 1354 JMB

*Property to be searched*

The location to be searched is: a vehicle described as a white Alfa Romeo, currently bearing

Missouri license plate RN9-F0X

 



**ATTACHMENT B**

**4:25 MJ 1354 JMB**

*Property to be seized*

1.  All records and information that constitute contraband, fruits, evidence and instrumentalities concerning violations of Title 21, United States Code, Sections 841(a) and 846, involving **CASSIDY STOKES**, including:

   a. Controlled substances;

   b. Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies and spoons;

   c. Books, records, receipts, notes, ledgers, computer hard-drives and disk records, and other papers relating to the transportation, ordering, purchasing and distribution of controlled substances and/or firearms;

   d. Telephone bills, invoices, packaging, cellular batteries and/or charging devices, cancelled checks or receipts for telephone purchase/service;

   e. Cellular telephones, digital and/or alphanumeric text (two-way) pagers; computers capable of e-mail and/or chat-room and/or digital communication, answering machines; address and/or telephone books and papers reflecting names, addresses, and/or telephone numbers of sources of supply, of customers, and/or evidencing association with persons known to traffic in controlled substances or to facilitate such trafficking;

2

f.  Photographs, in particular photographs of co-conspirators, assets and/or controlled substances;

g.  United States currency, precious metals, jewelry, and financial instruments, including, but not limited to, stocks and bonds, papers, titles, deeds and other documents reflecting ownership of vehicles and property utilized in the distribution of controlled substances or which are proceeds from the distribution of controlled substances;

h.  Books, records, receipts, pay stubs, employment records, bank statements and records, money drafts, letters of credit, money order and cashier's checks receipts, passbooks, bank checks and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money;

i.  Papers, tickets, notes, schedules, receipts and other items relating to travel, including, but not limited to, travel to and from St. Louis, Missouri and elsewhere;

j.  Indicia of occupancy, residency, rental and/or ownership of the vehicles and/or premises described above, including, but not limited to, utility and telephone bills, cancelled envelopes, rental or lease agreements and keys; and

k.  Firearms and/or weapons.

3